Catron, Judge,
delivered the opinion of the court. Gale took out a ca. sa. against John Snapp, who was arrested and gave a prison bounds bond, with Jacob K. Knapp and A. B. Tipton his securities; which was assigned by the sheriff to Gale the plaintiff. At the end of fifteen days Gale was notified by A. B. Tipton, who was also jailor, to pay the prison fees or he would discharge John Snapp. This took place in Sullivan county in 1823. The fees were not paid and John Snapp was discharged from the prison rules. A motion was made upon due notice, by the plaintiff, against the defendants, upon the prison bounds bond for the amount of the execution, in the Sullivan county court; where the defendants relied upon the discharge for the non-payment of the prison fees, as a defence to the motion. Upon an appeal to the circuit court, that court overruled the motion, and gave judgment for defendants, from which a writ of error was taken to this court.
The only question is, had the jailor A. B. Tipton the power to discharge John Snapp from the prison rules for the non-payment of the prison fees.
The act of 1741 ch. 18, provides that prison rules shall be established, in which prisoners for debt may walk for their health, and if they keep within the bounds prescribed, they shall be deemed true prisoners.
The act of 1759 ch. 14, orders that the bond for the rules shall be assigned to, and if violated, be recovered on by the plaintiff in the execution.
The act of 1812 ch. 25, gives the jail liberties to all *86 prisoners for debt, whether confined upon mesne or final process; and by sec. 3, the sheriff is bound to take secú-rity for the prison rules, if tendered, beiore he commits the defendant in the ra. sa. to prison.
By the act of 1817 ch. 16, all debtors confined, either in close jail or within the prison rules, are subject on proper application to be discharged under the insolvent law of 1811, ch.24. And the 4th section provides that “at the end of every fifteen days, the plaintiff in the ca. sa. shall pay the jailor the prison fees for the preceeding fifteen days, and upon failing to make such payment, it shall and may be lawful for the jailor to discharge and set at liberty such prisoners.”
The acts of 1796, ch. 7, sec. 3, and 1819, ch. 56, enact, “that the jailor shall provide one pound of boiled flesh and one pound of bread each day, and good water for each prisoner, for which he shall receive thirty seven and a half cents per day.”
The act of 1824, ch. 11, provides, “that where a debtor takes the benefit of the prison bounds, that after fifteen days confinement, he shall be compelled to find himself, unless he surrenders a schedule of his property, as by law directed; and the sheriff of the county shall not be bound for his support, nor shall the plaintiff in the action, in which the process of execution issued,be bound to pay for his board as by law he is at present bound.”
There can be but little doubt under these statutes that, before 1824 the jailor was bound to find the provisions pointed out by the act of 1796, ch. 7, for the prisoner, who had the benefit of the prison rules. It could not have been contemplated that a place, where, perhaps, there was not one person residing within the prescribed bounds, not the jailor himself probably, but that some one should furnish the unfortunate debtor (who might be sick, disabled by age or infirmity, or unable to get employment) with the means of subsistence, and that the common jail should be open to him as a dwelling if he chose to occupy it.
Even in the most respectable towns of this day, a pri *87 soner might be so poor, sick or wretched in his apparel as to exclude him from the houses of the inhabitants and, perhaps, starve him in the streets, or might he of such had character as to exclude him or her.
The law is not altered by the act of 1824, where a schedule is delivered of the prisoner’s effects, and honest exertions made to extricate himself from jail. In this he might fail for years, were his estate large and complicated, and he confined by a number of executions at the same time, by foreigners who had no agents or attornies to whom notice could he given. If the prison fees were not paid in this case at the end of every fifteen days, the jailor at his discretion might refuse to feed the prisoner longer, and discharge him. It is the duty of the jailor to feed the prisoner, and the court is bound to presume that he has done so, unless the contrary appears.
If the prisoner boards himself, as is commonly the case, then thejailor would not be authorized to discharge him for the non-payment of his fees; but it would lie upon the party making the motion to prove the tact, that the prisoner had boarded himself. It is very useless for us to enquire, what were the duties of jailors in England in feeding prisoners; the statutes of this country, and the practice under them, settle what the duties of jailors are, without reference to other laws.
Let the judgment be affirmed.